NOT FOR PUBLICATION                                                                         (Doc. No. 15)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                                            :
JOHN J. GRANDIZIO,                              :
                                                            :
              Plaintiff,                              :       Civil No. 14-3868 (RBK/KMW)
                                                            :
              v.                                         :
                                                            :       **OPINION**
JOSEPH SMITH, et al.,                           :
                                                            :
              Defendants.                         :
_____:

**KUGLER**, United States District Judge:

Before the Court are the motions of Defendants Joseph Smith ("Smith"), Matthew Minutolo ("Minutolo"), Richard Henry ("Henry"), Daniel Aparicio ("Aparicio") (collectively the "Officer Defendants"), and the Borough of Stone Harbor (the "Borough") (collectively "Defendants") to dismiss the Complaint of Plaintiff John Grandizio ("Plaintiff") as to the Borough pursuant to Federal Rule of Civil Procedure 12(b)(6), and for summary judgment as to Plaintiff's false imprisonment claim pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motions are granted.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This matter arises out of the alleged altercation between Plaintiff and Defendants on May 25, 2013, outside of the 96th Street Pub in Stone Harbor, NJ. (Compl. ¶¶ 12, 17.) At the time of the incident, Defendants Smith and Minutolo were police officers with the Borough (Compl. ¶¶ 6-7), and Defendants Henry and Aparicio were special law enforcement officers with the

1

Borough (Compl. ¶¶ 9-10). As Plaintiff and his girlfriend exited the 96th Street Pub in order to "avoid a physical confrontation as a visibly intoxicated patron had begun making unwanted sexual advances on [Plaintiff's girlfriend]," they walked past Aparicio and Henry, who were located at the front entrance. (Compl. ¶ 14.) Smith and Minutolo arrived at the 96th Street Pub after Plaintiff and his girlfriend had left. (Compl. ¶ 16.) After Plaintiff and his girlfriend had walked down the street, they were approached by "several officers, suddenly and without warning." (Compl. ¶ 17.) Plaintiff was picked up and dragged away, "struck repeatedly about the head and face, wrestled into a submission hold, and at some point Plaintiff was placed into handcuffs." (Compl. ¶¶ 18-19.) Plaintiff lost consciousness, and when he regained it, he was in the rear cargo section of a police vehicle. (Compl. ¶¶ 19-20.) Plaintiff was transported to police headquarters, where he was charged with disorderly conduct, and then released from custody. (Compl. ¶¶ 20-21.) The next day, Plaintiff went to Cape Regional Medical Center for treatment of his injuries. (Compl. ¶ 21.) Plaintiff pled guilty to the disorderly persons offense, N.J.S.A. 2C:33-2(a), on December 23, 2013. (Ex. 1 to Def.'s Br., Municipal Court Transcript of Plaintiff's Guilty Plea.)

Plaintiff filed his Complaint on June 17, 2014. (Doc. No. 1.) Against the Officer Defendants, Plaintiff alleges a violation of his constitutional rights under the Fourth and Fourteenth Amendments to be free from an unreasonable search and seizure of his person pursuant to 42 U.S.C. § 1983(Count I), assault (Count II), battery (Count III), and false imprisonment (Count IV). Against the Borough, Plaintiff alleges municipal liability pursuant to 42 U.S.C. § 1983 (Count V) and liability based on a respondeat superior theory for the assault, battery, and false imprisonment claims (Count VI). Defendants filed the instant motion to

dismiss and for summary judgment on August 6, 2014.  (Doc. No. 15.)  Defendants seek to dismiss Counts V and VI against the Borough, and summary judgment as to Count IV.

## II.    LEGAL STANDARD

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted.  When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

To make this determination, a court conducts a three-part analysis.  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Id. (quoting Iqbal, 556 U.S. at 675).  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 131 (quoting Iqbal, 556 U.S. at 679).  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Id. (quoting Iqbal, 556 U.S. at 680).  This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 679.

A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  Id.

### B.  Summary Judgment

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996).  The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

If the party seeking summary judgment makes this showing, it is left to the nonmoving party to "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify

4

those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 F. App'x. 353, 354 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the fact finder, not the district court. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

A motion for summary judgment may be filed "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). The Third Circuit has held that "where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." Sames v. Gable, 732 F.2d 49, 51 (3d Cir. 1984) (quoting Ward v. United States, 471 F.2d 667, 670-71 (3d Cir. 1973)) (finding that the district court erred in granting defendants' motion for summary judgment where plaintiffs' interrogatories pertinent to the dispute remained unanswered by defendants). However, a motion for summary judgment is not premature per se where it is filed before the close of discovery. See Childers v. Joseph, 842 F.2d 689, 693 n.3 (3d Cir. 1988) (noting that a motion for summary judgment made two weeks before close of discovery was not premature where plaintiff did not seek to conduct additional discovery or argue that particular facts needed to oppose the motion would be forthcoming were she permitted to conduct more discovery).

### III. DISCUSSION

#### A. False Imprisonment – Count IV

Defendants move for summary judgment on Plaintiff's false imprisonment claim against the Officer Defendants. As a preliminary matter, the Court notes that, although the motion was filed before the close of discovery, it is not premature. Plaintiff argues generally that "there are numerous, highly material facts in dispute," and "there has not been adequate time for discovery." (Pl.s' Br. 5.) However, Plaintiff does not explain what information is required and why the missing information would be necessary to adequately oppose the motion. See Fed. R. Civ. P. 56(d). Nor does Plaintiff contend that Defendants possess facts needed to oppose the motion. Rather, the substance of Plaintiff's opposition rests on the merits of the motion. Therefore, the Court finds it proper to consider Defendants' motion at this time.

Defendants argue that the presence of probable cause is an absolute defense to a false imprisonment claim, and that Plaintiff's guilty plea for the disorderly conduct offense with which he was charged establishes probable cause as a matter of law. (Def.'s Br. 9-10.) Plaintiff does not dispute that he pled guilty to N.J.S.A. 2C:33-2(a). (Pl.'s Br. 2.)[1] Rather, he argues that the disorderly persons offense that he was charged with only allows for the issuance of a summons; therefore his arrest was improper, and the guilty plea does not bar the false imprisonment claim. (Pl.'s Br. 5-6.)

---

[1] Local Rule 56.1(a) requires that the movant furnish a statement of material facts not in dispute, in a document separate from his brief. L. Civ. R. 56.1(a). As the rule itself so provides, a defendant's failure to submit a Rule 56.1 statement is grounds for dismissal. However, a court may excuse the absence of the statement where the requirements as to the substance of the statement are met. See, e.g., Schecter v. Schecter, No. 07-419, 2008 WL 5054343 (D.N.J. Nov. 26, 2008). Courts also decline to deny such motions where there is no evidence of bad faith on the part of the moving party. See Gabriel v. Safeway, Inc., No. 10-2256, 2011 WL 5864033, at *7 (D.N.J. Nov. 21, 2011) (choosing not to deny a motion for summary judgment for failure to submit a Rule 56.1 statement where there was "no evidence of bad faith . . . [,] Defendants' factual representations [were] well-organized, and Plaintiff was able to address each factual assertion in an orderly manner"). Here, although Defendants failed to file a separate Rule 56.1 statement, Defendants' brief includes a "Statement of Relevant Facts," set forth in separately enumerated paragraphs, with a citation to the record following each statement. (Def.'s Br. 2-5.) Plaintiff responded to each paragraph in his opposition brief. (Pl.'s Br. 2.) Therefore, the Court will excuse Defendants' failure to strictly comply with Rule 56.1, as the requirements of the substance of the statement have been met.

A common law claim for false imprisonment requires the plaintiff to show that he was (1) arrested or detained against his will (2) without proper legal authority or justification. Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 591 (2009). Probable cause is an absolute defense to the tort of false imprisonment in New Jersey. D'Arrigo v. Gloucester City, No. 04-5967, 2007 WL 1755970, at *8 n.12 (D.N.J. June 19, 2007) (citing Wildoner v. Borough of Ramsey, 162 N.J. 375 (2000)). Furthermore, the Third Circuit has recognized that "a guilty plea—even one for a lesser offense—does not permit a later assertion of no probable cause." Walker v. Clearfield Cnty. Dist. Attorney, 413 Fed. App'x 481, 483 (3d Cir. 2011). Summary judgment is therefore appropriate here, as there is no genuine dispute as to a material fact. Given his undisputed guilty plea, Plaintiff does not have a viable claim for false imprisonment as a matter of law. See McGann v. Collingswood Police Dep't, No. 10-3458, 2012 WL 6568397, at *10 & n.11 (D.N.J. Dec. 17, 2012) (finding that plaintiff's false arrest and false imprisonment claims failed because of plaintiff's guilty plea); Ferry v. Barry, No. 12-009, 2012 WL 4339454, at *5 (D.N.J. September 19, 2012) (same).[2, 3]

### B. Municipal Liability under Section 1983 – Count V

A plaintiff may not hold a municipal entity liable under 42 U.S.C. § 1983 on a theory of respondeat superior. See Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658, 691 (1978).

---

[2] The Court notes that it relies on cases that have interpreted Walker in the context of claims for false imprisonment pursuant to § 1983. However, the Court finds no meaningful distinction between the common law claim for false imprisonment and a § 1983 claim for false imprisonment. See Wildoner, 162 N.J. at 389 (finding that probable cause is an absolute defense to plaintiff's common law and § 1983 false imprisonment claims); Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995) (finding that, pursuant to § 1983, "an arrest based on probable cause [cannot] become the source of a claim for false imprisonment").

[3] Plaintiff's argument that summary judgment is not appropriate because he should have only been issued a summons for his disorderly persons offense, and not arrested, has no merit. The Court agrees with Defendants that Plaintiff's interpretation of State v. Dangerfield, 171 N.J. 446 (2002), for this proposition is misplaced. Although the Dangerfield court acknowledged that "the modern view favors the issuance of citations and summonses over custodial arrests for minor offenses," the court ultimately held that "we do not disturb the authority of the police to arrest for disorderly and petty disorderly persons offenses that occurred in their presence." Id. at 460.

Instead, a viable section 1983 municipal liability claim must include allegations that a government entity has adopted a particular policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," and that such policy or custom has been "the moving force" behind the deprivation of an individual's constitutional rights.  Id. at 694.  Municipal policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [a local governing] body's officers."  Simmons v. City of Phila., 947 F.2d 1042, 1059 (3d Cir. 1991) (citing Monell, 436 U.S. at 690).  A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled . . . as to [have] the force of law."  Id. (citing Monell, 436 U.S. at 691).

To survive a motion to dismiss in this context, a plaintiff "must identify a custom or policy, and specify what that custom or policy was."  McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009).  Furthermore, "a single incident of unconstitutional activity is not sufficient to impose liability under Monell" when the municipal actor does not have policymaking authority.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985); see Ingram v. Twp. of Deptford, 911 F. Supp. 2d 289, 302 (D.N.J. 2012) (finding that plaintiff's complaint failed to plead a Monell claim where plaintiff cited only one past incident of excessive force without anything linking that incident with the case in dispute).

Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" that will trigger liability under section 1983.  See City of Canton v. Harris, 489 U.S. 378, 388 (1989).  However, such liability is reserved for cases in which the failure to train evidences a "deliberate indifference" to the constitutional rights of that municipality's inhabitants.  Id. at 389.  It is not enough to allege simply that a training program

8

exists and that it has proved to be inadequate. City of Canton, 489 U.S. at 390. Rather, the plaintiff's burden is to "identify a failure to provide specific training that has a causal nexus with his or her injuries and . . . demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." Reitz v. Cnty. of Bucks, 125 F.3d 139, 144 (3d Cir. 1997). Deliberate indifference may be established when a policymaker has knowledge of a "pattern of similar constitutional violations by untrained employees" but takes no action to augment or alter the municipality's employee training programs accordingly. See Lapella v. City of Atlantic City, No. 10-2454, 2012 WL 2952411, at *7 (D.N.J. July 18, 2012) (citing Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011)).

While the Supreme Court originally fashioned the "deliberate indifference" doctrine in the context of a municipality's alleged failure to properly train its police officers, the Third Circuit has since adopted this standard in other policy and custom situations. Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996). In general, a municipality may be liable under section 1983 if it tolerates known illegal conduct by its employees. Id. In such circumstances, it can be said to have a custom that evidences deliberate indifference to the rights of its citizens if (1) policymakers were aware that municipal employees had deprived others of certain constitutional rights in the past; (2) the municipality failed to take precautions against future violations; and (3) this failure led, at least in part, to the plaintiff suffering the same deprivation of rights. See id. (citing Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990)). Thus, in the context of a plaintiff who alleges that a municipal employee violated his Fourth Amendment constitutional right to be free from unreasonable search and seizure of his person, as Plaintiff does here, he may state a section 1983 claim against the municipality itself if he alleges that

employees had made such unreasonable searches and seizures in the past, that the municipality was well aware of these occurrences, that the municipality failed to take action to prevent future violations, and that this failure contributed in part to the plaintiff being himself subjected to the unconstitutional search and seizure.

Plaintiff's Complaint fails to plead factual grounds that permit the Court to draw a reasonable inference that the Borough maintained a policy or custom of depriving its citizens of their constitutional rights. Plaintff's Monell claim rests on the following allegations: (1) that the Borough "developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the Borough," which caused the alleged violation of Plaintiff's rights (Compl. ¶ 34); (2) that the Borough had a policy and/or custom of "fail[ing] to exercise reasonable care in hiring its police officers," including the Officer Defendants (Compl. ¶ 35); (3) that it was the policy and/or custom of the Borough to "inadequately supervise and train its police officers," including the Officer Defendants (Compl. ¶ 36); (4) that as a result of these polices and customs, Defendants "believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated (Compl. ¶ 37); and (5) that these policies and customs "demonstrate a deliberate indifference" by the Borough to the constitutional rights of its citizens (Compl. ¶ 38).

Plaintiff may not simply include a Monell claim in his Complaint as a matter of course by making the conclusory allegation that the alleged constitutional deprivations were due to a policy or custom of the Borough. Rather, Plaintiff must allege some actual facts suggesting as much. Plaintiff does not claim that the Borough lawmakers promulgated an official policy that led to the alleged deprivation of Plaintiff's constitutional rights. Nor does Plaintiff sufficiently allege that the Borough maintained a custom that was the "moving force" behind the deprivation.

Plaintiff does not contend that the Borough failed to take steps to correct any past constitutional violations by officers; in fact, Plaintiff does not even allege that Borough police officers had made any unreasonable searches and seizures in the past that the Borough would have the responsibility of addressing.  In short, Plaintiff has not specified what custom or policy of the Borough led to Plaintiff's alleged deprivations.  See McTernan, 564 F.3d at 658.

To the extent that Plaintiff alleges failure to train, Plaintiff also fails to meet the pleading standard.  Plaintiff has not identified a failure to provide specific training, or identified any shortcomings in any existing training programs, that caused the specific harm to the Plaintiff.  Plaintiff's allegation that the failure to train "fail[ed] to adequately discourage further constitutional violations" by police officers provides no factual support to establish a causal link between the alleged insufficient training and the injury claimed by Plaintiff.  (Compl. ¶ 36.)  Nor does Plaintiff allege a pattern of similar constitutional violations by untrained employees.  Thus, Plaintiff has not demonstrated that his alleged injury was a result of the Borough's failure to train, and not the officers' individual shortcomings.  See Lapella v. City of Atlantic City, 2012 WL 2954111, at *8 (finding that plaintiff did not adequately plead a failure to train claim because the complaint contained only conclusory allegations).

Finally, Plaintiff does not adequately allege deliberate indifference.  Stating that the Borough's "policies and customs demonstrate a deliberate indifference" is merely a legal conclusion, and does not suffice.  (Compl. ¶ 38.)  As noted supra, to show deliberate indifference, Plaintiff's Complaint must include factual allegations demonstrating a past deprivation of constitutional rights that the Borough was aware of and declined to remedy, which he has failed to do.  Count V of Plaintiff's complaint must be dismissed.

### C.  Respondeat Superior – Count VI

Count VI of Plaintiff's Complaint raises a respondeat superior theory of liability against the Borough for the "assault, battery, and false imprisonment committed against Plaintiff" by the officer Defendants, as the officers committed the assault, battery, and false imprisonment "while acting in the scope of their employment" with the Borough.[4] (Compl. ¶ 40.) Defendants argue that the Borough is immune from liability under the New Jersey Tort Claims Act ("NJTCA") on the assault and battery claims because these are intentional torts. (Def.'s Br. 14-15.) Plaintiff argues that Count VI alleges a violation of the New Jersey Constitution, and thus the intentional tort immunity of the NJTCA is inapplicable. (Pl.'s Br. 9-10.)

The NJTCA provides that "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances." N.J.S.A. 59:2-2. However, an exception exists for public entities where the act or omission of the employee constitutes "a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. 59:2-10. Assault and battery are torts that necessitate a showing of intentional or willful misconduct, and thus the Borough is immune from liability for the assault and battery claims. See Merman v. City of Camden, 824 F. Supp. 2d 581, 597 (D.N.J. 2010) (dismissing plaintiff's claims that the city was vicariously liable for the alleged assault and battery by the city's police officers based on immunity under the NJTCA). Furthermore, Plaintiff's argument that his assault and battery claims are actually state constitutional claims is unconvincing. First of all, the New Jersey Constitution is not mentioned at all in Count VI. Secondly, insofar as Plaintiff does allege a violation of the New Jersey Constitution in his Complaint, he specifically invokes Article I,

---

[4] As discussed in Section III (A), supra, the Court grants summary judgment to Defendants on the false imprisonment claim, and thus it need not address the false imprisonment claim in the context of the motion to dismiss.

Section 7, which provides for freedom from unreasonable searches and seizures.  (Compl. ¶ 22.) This provision does not provide constitutional protection from the common law torts of assault and battery.  Therefore, Plaintiff's vicarious liability claim against the Borough for assault and battery must be dismissed.

**IV.    CONCLUSION**

For the reasons stated herein, Defendants' motion for summary judgment as to Count IV is granted.  Defendants' motion to dismiss Count V against the Borough is dismissed without prejudice.  Plaintiff may file a motion for leave to file an amended complaint to cure the deficiencies noted herein within the requisite time period stated in the Order accompanying this Opinion.  See Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[E]ven when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile.")  Count VI against the Borough is dismissed with prejudice, as the Court finds that the Borough's immunity from suit renders an amendment futile.  An appropriate order shall issue.


Dated: 1/5/2015                                                                 s/ Robert B. Kugler
                                                                                          ROBERT B. KUGLER
                                                                                          United States District Judge